

GARBARINI FITZGERALD P.C.
Richard M. Garbarini (RG 5496)
rgarbarini@garbarinilaw.com
420 Lexington Ave.
Suite 2743
New York, New York 10170
Telephone: (212) 300-5358
Facsimile: (888) 265-7054

*Attorneys for Plaintiff*
*and the Putative Class*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

JONATHAN AGRAMONTE, on behalf of
himself and all other similarly situated
employees,

                        Plaintiff,

        v.

ST MANAGEMENT GROUP, INC., STEVE
TENEDIOS, JOHN ZAMFOTIS, 370 BAKE
CORP. d/b/a CAFÉ METRO, 1211 BAKE
OPERATING, LLC d/b/a FRESH&CO., CAFÉ
METRO, FRESH&CO., FOOD MERCHANTS
CAFE, FOOD EXCHANGE and FLAVORS,

                        Defendants.

-------------------------------------------------------------x

Case No.:

ECF CASE

**FLSA CLASS AND COLLECTIVE
ACTION COMPLAINT**

    Plaintiff JONATHAN AGRAMONTE, individually and on behalf of all other similarly

situated employees, by and through his attorney at GARBARINI FITZGERALD P.C., allege,

upon personal knowledge as to himself and upon information and belief as to other matters, as

follows:

## NATURE OF THE ACTION

1.      Plaintiff AGRAMONTE was employed as a "delivery person" for Defendants at the Café Metro located at 370 Lexington Ave in New York City, sued herein as 42nd Street Bakery, LLC and Fresh&Co. located at 1211 Avenue of the Americas in New York City sued herein as 370 BAKE CORP., and was employed ostensibly as a "dishwasher" for Defendants at the Fresh&Co. located at 1211 Avenue of the Americas in New York City, sued herein as 1211 Bake Operating, LLC.  As a delivery person however, AGRAMONTE made very few deliveries, instead, spending almost his entire eleven hour shift washing dishes, preparing food, sweeping, washing tables and running errands.

2.      At Café Metro, AGRAMONTE worked 55 hours per week, from March 2013 through May 2013, often working off-the-clock at an illegal regular rate of pay of $5.00 per hour, and without being paid overtime.  When AGRAMONTE complained to his supervisor that he should be paid minimum and overtime wages, he was immediately retaliated against by being transferred to the Fresh&Co. located at 1211 Avenue of the Americas, where he was forced to work off payroll and without pay until he quit.

3.      This action is brought pursuant to the New York Labor Law Article 6, § 190 *et seq*. and Article 19, § 650 *et seq*., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 ("New York Labor Law"), as well as the retaliation provision 29 U.S.C. § 215 to recover all unpaid minimum and over-time wages, spread-of-hours pay owed to Plaintiff and all other similarly situated current and former employees of Defendants as well as injunctive and declaratory relief against Defendants' unlawful actions, plus interest, attorneys' fees and costs.

4.      Defendants 370 BAKE CORP. d/b/a CAFÉ METRO, 1211 BAKE OPERATING, LLC d/b/a FRESH&CO., CAFÉ METRO, FRESH&CO., FOOD MERCHANTS CAFÉ, FOOD EXCHANGE and FLAVORS are a unified employer, consisting of twenty four separate cafés: nine bearing the name Café Metro, nine Fresh&Co., two Food Exchange, one Food Merchants Café, and three Flavors.  Together all twenty four cafés, along with a food dispensary that provides food for each of the member cafés, form the CAFÉ METRO GROUP which is run by majority owner Defendant STEVE TENEDIOS and his company Defendant ST MANAGEMENT.   The individual cafés in the CAFÉ METRO GROUP routinely exchange employees, food, and all management, human resources and decision making is centralized with Defendant TENEDIOS and ST MANAGEMENT.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to the FLSA, 29 U.S.C. §216(b), 28 U.S.C. § 1331 and 1337 (federal question) and 28 U.S.C. § 2201 (declaratory judgment).

6.      This Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. § 1367, as they are so related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.      At all times relevant to this Complaint, Plaintiff and Defendants were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

8.      Each cafe in the CAFÉ METRO GROUP earned in excess of $500,000 per year, at all relevant times.

9.      The actions of Defendants described herein were intentional and the statute of limitation under the FLSA for such willful violations is three years pursuant to 29 U.S.C. § 255(a).  Similarly, the statute of limitation under the New York Labor Law of six years pursuant to New York Labor Law § 198(3) applies.

10.      AGRAMONTE's claim of retaliation is properly before this Court pursuant to 28 U.S.C. § 1367.

11.      Plaintiff has consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

12.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a) as the residence of all Defendants and the forum which all of the operable facts took place.

## PARTIES

13.      Plaintiff JONATHAN AGRAMONTE ("AGRAMONTE") is a resident of New York and was employed by Defendants as a delivery-person from in or about March 2013 until May 2013, first at Defendants' Café Metro located at 370 Lexington Ave in New York City, sued herein as 370 BAKE CORP. and later at the Fresh&Co. located at 1211 Avenue of the Americas, sued herein as 1211 BAKE OPERATING, LLC.

14.      Upon information and belief, Defendant ST MANAGEMENT GROUP, INC. ("ST MANAGEMENT") is a New York corporation with a principal place of business located at 315 Madison Avenue, Suite 1501, New York, New York.  ST MANAGEMENT functions as the

central book-keeping, human resource, and management for the entire CAFÉ METRO GROUP described below.

15.    STEVE TENEDIOS ("TENEDIOS") is a natural person and the Chairman and Chief Executive of Defendant ST MANAGEMENT and majority owner of the individual member cafés that form the CAFÉ METRO GROUP.  Upon information and belief, TENEDIOS resides in Tenafly, New Jersey.

16.    At all times material hereto, TENEDIOS participated in, assisted in, supervised, guided and totally controlled ST MANAGEMENT in its decision making, financing and other affairs.  ST MANAGEMENT is the "alter ego" of TENEDIOS and was dominated, controlled and supervised by TENEDIOS to such a degree that it had no independent ability to function.

17.    Upon information and belief, Defendant 370 BAKE CORP d/b/a CAFÉ METRO ("370 BAKE") is a New York limited liability company with a principal place of business located at 370 Lexington Ave.  370 BAKE is owned and operated by Defendant TENEDIOS, and ST MANAGEMENT is the designated agent for process.

18.    Upon information and belief, defendant 1211 BAKE OPERATING, LLC d/b/a FRESH&CO. ("1211 BAKE") is a New York limited Liability Company with a principal place of business located at 1211 Avenue of the Americas in the City and County of New York. Defendant 1211 BAKE was formerly a Café Metro but rebranded as a Fresh&Co. in order to dilute the large number of Café Metro's throughout New York City.  Defendant 1211 BAKE is owned by Defendants TENEDIOS and ZAMFOTIS.

19.    Upon information and belief, Defendant JOHN ZAMFOTIS, ("ZAMFOTIS") is a natural person and is a limited partner and manager of Defendant 1211 BAKE.  ZAMFOTIS is the brother-in-law of TENEDIOS; his son Kosta Zamfotis is the in-house bookkeeper for ST

MANAGEMENT and his son Chris Zamfotis is responsible for the day-to-day operations of the dispensary discussed below.

20.     Upon information and belief, Defendant CAFÉ METRO consists of nine separate partnerships all of which are controlled by Defendant TENEDIOS who is the majority owner of each location: (i) 466 Lexington Avenue, New York, New York, (ii) 370 Lexington Avenue, New York, New York, (iii) 22 West 52nd Street, New York, New York, (iv) 1221 Avenue of the Americas, New York, New York, (v) 530 7th Avenue, New York, New York, (vi) 14 East 42nd Street, New York, New York, (vii) 839 Seventh Avenue, New York, New York, (viii) 15 MetroTech Center, Brooklyn, New York, and (ix) 200 West 57th Street, New York, New York.

21.     Upon information and belief, Defendant FRESH&CO. consists of nine separate entities all of which are controlled by Defendant TENEDIOS who is the majority owner of each location: (i) 127 East 60th Street, New York, New York, (ii) 1211 6th Avenue, New York, New York, (iii) 425 Park Avenue South, New York, New York, (iv) 681 Lexington Avenue, New York, New York, (v) 45 West 57th Street, New York, New York, (vi) 1359 Broadway, New York, New York, (vii) 363 7th Avenue, New York, New York, (viii) 729 Broadway, New York, New York, (ix) 309 Madison Avenue, New York, New York.

22.     Upon information and belief, Defendant FOOD EXCHANGE consists of two separate entities both of which are controlled by Defendant TENEDIOS who is the majority owner of each location: (i) 120 East 59th Street, New York, New York, and (ii) 1400 Broadway, New York, New York.

23.     Upon information and belief, Defendant FOOD MERCHANTS CAFÉ is an entity controlled by TENEDIOS with a principal place of business located at 26 East 40th Street, New York, New York.

6

24.     Upon information and belief, Defendant FLAVORS consists of three separate entities controlled by TENEDIOS with principal places of business located at (i) 27 Whitehall Street, New York, New York, (ii) 74 Broad Street, New York, New York, and (iii) 100 West 23rd Street, New York, New York.

25.     The CAFÉ METRO GROUP consists of Defendants 370 BAKE, 1211 BAKE, CAFÉ METRO, FRESH&CO., FOOD EXCHANGE, FOOD MERCHANTS CAFE, and FLAVORS as well as the dispensary which prepares all food for the member cafés.  There are various corporate and unincorporated associations which were formed for the purpose of owning the individual cafés that form the CAFÉ METRO GROUP controlled by TENEDIOS. TENEDIOS is the sole or primary owner of each of the individual cafés in the CAFÉ METRO GROUP. cafés

26.     At all times material hereto, TENEDIOS participated in, assisted in, supervised, guided, and totally controlled the CAFÉ METRO GROUP in its decision making, financing and other affairs.  The CAFÉ METRO GROUP is the "alter ego" of TENEDIOS and was dominated, controlled and supervised by TENEDIOS to such a degree that it had no independent ability to function.

**THE CAFÉ METRO GROUP IS A UNIFIED EMPLOYER**

27.     Each of the individual cafés that form the CAFÉ METRO GROUP is run pursuant to a unified plan and management under Defendants TENEDIOS, ZAMFOTIS and ST MANAGEMENT.

28.     The Café Metro store format is used at each of the member cafés, but the names are changed to Fresh&Co., Food Exchange, Food Merchants Café or Flavors.  This was done because Defendants TENEDIOS and ZAMFOTIS, along with George Buono, decided the New

York market was saturated with Café Metro branded stores.  In fact, TENEDIOS and ZAMFOTIS changed several of the Café Metro branded locations to Fresh&Co. including the name for Defendant 1211 BAKE.

29.     Employees are routinely and seamlessly transferred between the individual cafés of the CAFÉ METRO GROUP.  In fact, Plaintiff AGRAMONTE was transferred to from the Café Metro located at 22 East 41 Street, to the Fresh&Co. (formerly Café Metro) located at 1211 6th Avenue, New York, New York.

30.     Defendant ST MANAGEMENT also controls the centralized food dispensary which handles all of the purchasing and food preparation for the twenty-four member cafés in the CAFÉ METRO GROUP.   Plaintiff AGRAMONTE, and others similarly situated, often had to pick up food from the dispensary and distribute it, on foot, to the various individual cafés.

31.     At all times relevant to this complaint, the dispensary charged a 40% mark-up to each and every individual member of the CAFÉ METRO GROUP.

32.     The individual cafés within the CAFÉ METRO GROUP coordinated food distribution with each other.  On a daily basis, certain locations, called "feeder stores", prepare and send food to other locations that did not have the space for food preparation.  The feeder stores made deliveries of pre-made sandwiches, fruit salads and parfaits and charged the other CAFÉ METRO GROUP members between $6,500 and $7,000 per week in food costs.

33.     The control and direction of every aspect of each café from general policies to hiring and firing, wages, and policies is centralized at ST MANAGEMENT and with TENEDIOS.  There is one employee handbook used for all of the member cafés.

34.     Further, each member café shares the same purchasing, back-end bookkeeping, upper-management, human resources, accounting, payroll and banking, all of which is controlled by ST MANAGEMENT.

35.     The bookkeeping office at ST MANAGEMENT, through George Buono, prepares cash envelopes to be distributed weekly to the employees at the CAFÉ METRO GROUP.  TENEDIOS personally takes a large portion of the weekly cash generated from the individual cafés.


## FACTS SPECIFIC TO PLAINTIFF JONATHAN AGRAMONTE

36.     Plaintiff AGRAMONTE was hired in or about March 2013 by Defendant 370 BAKE.  While Plaintiff worked for 370 BAKE, he was paid through another shell entity owned by TENEDIOS - 42nd Street Bakery, LLC.

37.     AGRAMONTE'S employment was terminated in or about May 2013 after he was transferred to the Defendant 1211 BAKE in retaliation for complaining about his wages.

38.     370 BAKE, at the express direction of Defendant TENEDIOS, paid AGRAMONTE $5.00 per hour as a "delivery worker" which is below the $5.65 per hour rate required by New York State for tipped non-food service employees.  Plaintiff was never paid spread-of-hours pay for his daily shift which exceeded 10 hours, or over-time for all hours in excess of 40.

39.     Defendants are not, however, allowed to avail themselves of the Federal or New York State tip credit.  AGRAMONTE made very few deliveries, and when he was occasionally required to make a delivery, he was expected to walk.  The vast majority of his eleven hour shift,

in which no breaks were ever taken, was spent picking up food from the dispensary, washing dishes, preparing food for the salad area, sweeping, running errands, and washing tables.

40.     AGRAMONTE was transferred to work at Defendant FRESH&CO. in or about May 2013 after he asked why he was not getting paid minimum or overt-time wages.

## FACTS REGARDING RETAILIATION

41.     In or about May 2013, while working at 370 BAKE, AGRAMONTE complained to the delivery supervisor about his wages and hours.  AGRAMONTE also complained that he was getting very few deliveries and not receiving any tips.

42.     Immediately after AGRAMONTE's complaint, the Defendants retaliated by transferring AGRAMONTE to FRESH&CO. to work as a dishwasher.

43.     Defendant 1211 BAKE, at the express direction of TENEDIOS and ZAMFOTIS, refused to put AGRAMONTE on payroll, refused to allow AGRAMONTE to clock in and out each day, and refused to pay him at the end of the week.  AGRAMONTE had no choice but to quit.

## CLASS AND COLLECTIVE ALLEGATIONS

44.     Plaintiff brings FLSA claims on behalf of himself and all similarly situated employees employed at or by Defendants from March 14, 2011 through the trial of this action who elect to opt-in to this action (the "FLSA Collective").

45.     Defendants are liable under the FLSA for, inter alia, failing to properly compensate Plaintiff and the FLSA Collective, and as such, notice should be sent to the FLSA Collective.  Upon information and belief, there are many similarly situated current and former

employees of Defendants who have been underpaid in violation of the FLSA who would benefit

from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join

in the present lawsuit.  Those similarly situated employees are known to Defendants, are readily

identifiable, and can be located through Defendants' records.

46.     Plaintiff also brings New York Labor Law claims on behalf of themselves and a

class of persons under Rule 23 of the Federal Rules of Civil Procedure consisting of "all hourly

employees classified as delivery workers at Defendants from March 14, 2008 through the trial of

this action" (the "Rule 23 Class").

47.     The persons in the Rule 23 Class identified above are in the hundreds, perhaps

thousands, and are so numerous that joinder of all members is impracticable.  Although the

precise number of such persons is unknown, the facts on which the calculation of that number

can be based are presently within the sole control of the Defendants.

48.     The claims of Plaintiff are typical of the claims of the Rule 23 Class.

49.     Plaintiff will fairly and adequately protect the interests of the Rule 23 Class.

50.     Defendants have acted or have refused to act on grounds generally applicable to

the Plaintiff and the Rule 23 Class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the Rule 23 Class as a whole.

51.     There are questions of law and fact common to the Plaintiff and the Rule 23 Class

that predominate over any questions solely affecting individual members of the Rule 23 Class,

including but not limited to:

(a) whether Defendants failed to keep true and accurate time records for all hours worked
by Plaintiff and the Rule 23 Class;

(b) what proof of hours worked is sufficient where employer fails in its duty to maintain
true and accurate time records;

11

(c) whether Defendants failed to compensate Plaintiff and the Rule 23 Class in accordance with federal and state minimum wage laws and for work performed in excess of 40 hours per work-week with proper over-time wages as required by law;

(d) whether Defendants failed and/or refused to pay Plaintiff and the Rule 23 Class overtime pay for hours worked in excess of 40 hours per work week within the meaning of the New York Labor Law Article 6 §§ 190 et seq. and Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

(e) whether Defendants required the Plaintiff and the Rule 23 Class to work through their breaks with no pay;

(f) whether Defendants impermissibly required Plaintiff and the Rule 23 Class to purchase and lauder their uniforms and/or purchase a bicycle, repairs, helmet, reflectors and safety gear; and,

(g) the nature and extent of Plaintiff and the Rule 23 Class-wide injury and the appropriate measure of damages for the class.

52.     The claims of the Plaintiff are typical of the claims of the Rule 23 Class they seek to represent.  Plaintiff and the Rule 23 Class work or have worked for Defendants and have not been paid their minimum and over-time wages for the hours that they have worked in excess of 40 hours per week; and worked through their breaks with no pay.  Defendants have acted and refused to act on grounds generally applicable to the Rule 23 Class, thereby making declaratory relief with respect to the Rule 23 Class appropriate.

53.     Plaintiff will fairly and adequately represent and protect the interests of the Rule 23 Class.

54.     Plaintiff has retained counsel competent and experienced in complex class actions and in employment litigation.

55.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation - particularly in the context of a wage and hour litigation like the present action, where individual Plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the Rule 23

Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual Rule 23 Class Members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

### Defendants' General Employment Practices Applicable to the Plaintiff and All Similarly Situated Employees

56.     At all relevant times, Defendants were the Plaintiff and Putative Class's employers within the meaning of the FLSA and New York Labor Law.  Defendants had the power to hire and fire Plaintiff and the Putative Class, control their terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiff and the Putative Class's services.

57.     All decisions complained of here came directly from Defendants, specifically directed by TENEDIOS and ZAMFOTIS.

58.     At all times relevant to this complaint, Defendants maintained a policy and practice of requiring the Plaintiff and all similarly situated employees to work in excess of forty (40) hours per week without paying them appropriate minimum wage and/or over-time compensation, or spread-of-hours compensation, as required by federal and state laws.

59.     Defendants routinely obfuscated Plaintiff and the Putative Class's hours by requiring "off-clock" work.

60.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

61.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiff and other similarly situated and current and former workers.

62.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiff (and similarly situated individuals) worked, and to avoid paying Plaintiff properly for his full hours worked.

63.     Defendants failed to inform Plaintiff and the Putative Class that Defendants intended to take a deduction against Plaintiff's earned wages for tip income, as required by the NYLL before any deduction may be taken.

64.     Defendants failed to inform Plaintiff and the Putative Class their tips would be credited towards the payment of the minimum wage.

65.     Defendants failed to maintain a record of tips earned by Plaintiff and the Putative Class for the deliveries they made to customers.

66.     Plaintiff and the Putative Class have been victims of Defendants' common policy and practices violating their rights under the FLSA and New York Labor Law by *inter alia*, willfully denying them their earned tips and not paying them the wages they were owed for the hours they had worked.

67.     Defendants' pay practices resulted in Plaintiff and the Putative Class not receiving payment for all their hours worked, resulting in Plaintiff' effective rate of pay falling below the required minimum and overtime wage rate.

68.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiff and the Putative Class by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This pattern, practice and/or policy included depriving delivery workers of a portion of the tips earned during the course of employment.

69.     Under the FLSA and the NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

70.     Moreover, at all times Defendants required Plaintiff AGRAMONTE and the Putative Class who were tipped employees such as delivery workers to perform the jobs of multiple employees in addition to their primary responsibility.  The vast majority of the tipped employees' working day was spent on non-tipped related duties.  These additional, non-related, and non-tipped duties occupied more than two hours of each Plaintiff and the Putative Class's workday.

71.     Defendants paid the Plaintiff AGRAMONTE and the Putative Class at the lowered tip-credited rate, however, Defendants were not entitled to a tip credit because Plaintiff' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less). 12 N.Y.C.R.R. § 146.

72.     Plaintiff AGRAMONTE and the tipped Putative Class members were employed ostensibly as delivery workers (tipped employees) by Defendants, although their actual duties included greater or equal time spent in non-delivery, non-tipped functions such as those outlined above.

73.     New York State regulations provide that an employee cannot be classified as a tipped employee "on any day . . . in which he has been assigned to work in an occupation in

which tips are not customarily received." (12 N.Y. C. R. R. §§ 137-3.3, 137-3.4). Similarly, under federal regulation 29 C.F.R. § 531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

74.     Plaintiff AGRAMONTE and the Putative Class's duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated occupations with duties including transportation of items between store locations, maintenance and cleaning, food preparation, receiving and storing deliveries, dishwashing and kitchen assistance. While performing these duties, Plaintiff and the Putative Class did not receive tips; therefore, they constitute non-tipped occupations, and Defendants could not lawfully take a tip credit for any of the hours that Plaintiff and the Putative Class worked in these roles.

75.     Since Plaintiff AGRAMONTE and the tipped Putative Class members spent more than two hours of their workdays in non-tipped, non-delivery functions, Defendants were not entitled to take a tip credit with respect to their wages.

76.     In violation of federal law and state law as codified above, Defendants classified Plaintiff AGRAMONTE and the Putative Class as tipped employees and paid them below minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate for all the hours they worked.

77.     Defendants did not provide Plaintiff and the Putative Class with any break periods.

78.     Defendants failed to provide Plaintiff and the Putative Class with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece,

commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL § 195(3).

79.     Defendants failed to provide Plaintiff and the Putative Class, at the time of hiring and on or before March 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowance, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law § 195(1).

80.     Upon information and belief, until this lawsuit was filed, Defendants did not post the notices required by the FLSA and NYLL and/or did not otherwise inform Plaintiff and the Putative Class of the requirements of the tip credit.

81.     Defendants have not informed Plaintiff and the Putative Class about the tip credit, or the employment laws generally, in Spanish or other languages spoken by the employees, even though other rules and guidelines are posted in Spanish.

82.     Defendants' policy, pattern and/or practice of paying Plaintiff and the Putative Class a tipped wage despite their substantial work unrelated to a tipped occupation and failing to maintain and/or preserve accurate records of the hours Plaintiff and similarly situated employees

perform tipped work and/or non-tipped work, along with the corresponding wages received, for the purposes of determining pay, is a violation of the requirements of the FLSA and the NYLL.

### Defendants Do Not Provide Statutorily-Required Breaks

83.     The NYLL requires employers provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noonday meal period from 11 A.M. to 2 P.M.; an additional meal period between 5 P.M. and 7 P.M. of at least twenty (20) minutes for employees whose shift started before 11 A.M. and continues later than 7 P.M.; and/or a forty-five minute (45) meal period at a time midway between the beginning and the end of the shift for employees whose shift lasts more than six hours and start between 1 P.M. and 6 A.M. NYLL § 162.

84.     Defendants have maintained a policy, pattern and/or practice of denying Plaintiff and the Putative Class time off for meals in violation of NYLL § 162.

85.     Instead of receiving set break and meal times, usually Plaintiff and the Putative Class have only been able to take a 15 minute break during an 8-hour work day.  Defendants required Plaintiff and the Putative Class to return to work if there are deliveries to be made, or other work required.

86.     Defendants' policy, pattern and/or practice of routinely denying Plaintiff and the Putative Class the right to take the statutorily required meal and rest breaks is a violation of the NYLL.

18

## FIRST CAUSE OF ACTION
### (Fair Labor Standards Act – Failure to Pay Minimum Wage)
### (Brought on Behalf of Plaintiff and all FLSA Class Members)

87.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

88.     At all times during their employment, Plaintiff and the Putative Class were employed by Defendants from  in or about March 2013 to in or about May 2013.

89.     Since on or about March 14, 2011 through March 14, 2014, Defendants have violated the provisions of the FLSA, 29 U.S.C. § 206 and §215(a)(2) by failing to pay the Plaintiff and other similarly situated employees a minimum hourly wage.

90.     Defendants knew or showed a reckless disregard for the provisions of the FLSA concerning the payment of minimum wages and remains owing the named Plaintiff and other similarly situated employees a minimum wage for every hour worked during the three year period preceding this lawsuit.  Accordingly, both named and represented Plaintiffs are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Fair Labor Standards Act – Failure to Pay Over-time)
### (Brought on Behalf of Plaintiff and all FLSA Class Members)

91.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

92.     Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

93.     At all times relevant, Plaintiff and the FLSA Class were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

94.     The over-time wage provisions set forth in §§ 201 et seq. of the FLSA apply to Defendants.

95.     Defendants are engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

96.     Defendants have failed to pay Plaintiff and the FLSA Class over-time wages or minimum wage to which they were entitled under the FLSA.

97.     Defendants' violations of the FLSA, as described in this Complaint have been willful and intentional.  Defendants have not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and other similarly situated current and former employees.

98.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

99.     As a result of Defendant's willful violations of the FLSA, Plaintiff and all others similarly situated have suffered damages by being denied overtime wages in accordance with 29 U.S.C. § 201 et seq.

100.    As a result of the unlawful acts of Defendants, Plaintiff and the FLSA Class have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
### (New York Labor Law: Unpaid Minimum and Overtime Wages)
### (Brought on Behalf of Plaintiff and all Rule 23 Class Members)

101.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

102.    At times relevant to this action, Plaintiff and the Rule 23 Class were employees of Defendants who fall within the meaning of employer under the New York Labor Law.

103.    The minimum wage and over-time wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

104.    Defendants have failed to pay Plaintiff and the Rule 23 Class the over-time wages to which they were entitled under the New York Labor Law.

105.    By Defendant's failure to pay Plaintiff and the Rule 23 Class Members minimum and over-time wages for hours worked and for hours worked in excess of 40 hours per week, Defendants have willfully violated the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

106.    Due to Defendants' violations of the New York Labor Law, Plaintiff and the Rule 23 Class Members are entitled to recover from Defendants their unpaid minimum and over-time wages, reasonable attorneys' fees and costs of the action, pre-judgment and post-judgment interest, and notice and an opportunity for class members, after the determination of class-wide liability and of individual back pay and interest, to intervene in this action or to file their own suits and petition individually for liquidated damages, and other relief pursuant to New York Labor Law Article 19, §§ 650 et seq.

## FOUTH CAUSE OF ACTION
### (Violation of the Notice and Recordkeeping
### Requirements of the New York Labor Law)
### (Brought on Behalf of Plaintiff and all Rule 23 Class Members)

107.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

108.    Defendants failed to provide Plaintiff and the Rule 23 Class with a written notice, in English and/or Spanish, of their rate of pay, regular pay day, and such other information as required by NYLL § 195(1).

109.    Defendants are liable to the Plaintiff and the Rule 23 Class in the amount of $2,500, together with costs and attorney's fees

## FIFTH CAUSE OF ACTION
### (Violation of the Wage Statement Provisions of the New York Labor Law)
### (Brought on Behalf of Plaintiff and all Rule 23 Class Members)

110.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

111.    Defendants did not provide Plaintiff and the Rule 23 Class with wage statements upon each payment of wages, as required by NYLL § 195(3).

112.    Defendants are liable to the Plaintiff and the Rule 23 Class in the amount of $2,500, together with costs and attorney's fees.

## SIXTH CAUSE OF ACTION
### (Violation of NYLL – Unpaid Wages)
### (Brought on Behalf of Plaintiff and all Rule 23 Class Members)

113.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

22

114. The NYLL requires employers to pay promised wages for every hour worked. NYLL §§ 190(10, *et seq.*

115. Defendants failed to pay Plaintiff and the Rule 23 Class the promised wage for every hour worked.

116. Defendants' failure to pay Plaintiff and the Rule 23 Class the promised wage for every hour worked was not in good faith.

117. Plaintiff and the Rule 23 Class are entitled to all unpaid wages, attorneys' fees, liquidated damages and costs.

## SEVENTH CAUSE OF ACTION
### (Violation of NYLL – Failure to Provide Meal Periods)
### (Brought on Behalf of All Plaintiff and all Rule 23 Class Members)

118. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

119. The NYLL requires that employers provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 A.M. to 2 P.M.; an additional meal period between 5 P.M. and 7 P.M. of at least twenty (20) minutes for employees whose shift started before 11 A.M. and continues later than 7 P.M.: and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 P.M. and 6 A.M. NYLL § 162.

120. Defendants failed to provide the meal periods required by NYLL § 162.

121. Defendants' failure to provide the meal periods required by NYLL § 162 was not in good faith.

## EIGTH CAUSE OF ACTION
### (Violation of NYLL – Failure to Provide Notice and Information about Employment Laws)
### (Brought on Behalf of Plaintiff and all Rule 23 Class Members)

122.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

123.    The NYLL requires employers to maintain adequate and accurate written records of the actual hours worked and the true wages earned by employees. NYLL § 195(4); 12 N.Y.C.R.R. §§ 142-2.6, 146-2.1.

124.    Defendants failed to maintain adequate and accurate written records of the actual hours worked and true wages earned by Plaintiff and the Rule 23 Class.

125.    Defendants' failure to maintain adequate and accurate written records of the actual hours worked and true wages earned by Plaintiff and the Rule 23 Class was not in good faith.

## NINTH CAUSE OF ACTION
### (*Fair Labor Standards Act – Retaliation*)
### (Against all Defendants by Plaintiff Agramonte)

126.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

127.    At all relevant times, AGRAMONTE was engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

128.    The retaliation provisions set forth in Section 15(a)(3) of the FLSA apply to Defendants.

129.    As described herein, Defendants engaged in an intentional and malicious retaliation against AGRAMONTE in the harshest way possible.

130.    Defendants retaliated by transferring AGRAMONTE to FRESH&CO.

131.    Defendants further retaliated by refusing to allow AGRAMONTE to clock-in or clock-out, to put him on payroll, provide a time card or pay him any wages while he worked at FRESH&CO.

132.    As a result of Defendants' unlawful acts, AGRAMONTE is entitled to recover his back-pay, front-pay, punitive damages, compensatory damages, prejudgment interest, attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated past and present employees, prays for the following relief:

A.    That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the six years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by Defendants from March 2013 through May 2013, as an hourly employee.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages.

B.    Unpaid wages and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. § 201 et seq. and the supporting United States Department of Labor regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.       Designation of Plaintiff as Representative Plaintiff as representative of the Rule 23 Class, and counsel of record as Class Counsel;

F.       Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under New York Labor Law, Article 19, § 650 et seq., and the supporting New York State Department of Labor regulations;

G.       Unpaid minimum and over-time wages pursuant to N.Y. Lab. Law Article 19, § 650 et seq., and the supporting New York State Department of Labor regulations;

H.       All costs related to of tools-of-the-trade and

I.       New York Labor Law Section 195 and 196 damages;

J.       Pre-judgment interest;

K.       An injunction requiring Defendant to pay all statutorily-required wages pursuant to the New York Labor Law;

L.       After the determination of class-wide liability, of individual damages, and of Defendants' liability for back pay, notice to class members of the opportunity to intervene in this action or to file separate actions to recover liquidated damages under Article 19, § 68 1(1) of the New York Labor Law;

M.       An award of back-pay, front-pay, punitive damages, compensatory damages, prejudgment interest, attorneys' fees and costs pursuant to the retaliation provisions of the FLSA.

N.       Attorneys' fees and costs of the action; and,

26

O.     Such other relief as this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: March 14, 2014

Respectfully submitted,

GARBARINI FITZGERALD P.C.

By: _____
Richard M. Garbarini (RG 5496)
rgarbarini@garbarinilaw.com
420 Lexington Avenue
Suite 2743
New York, New York 10170
Telephone: (212) 300-5358
Facsimile: (888) 265-7054

*Attorneys for Plaintiff and
the Putative Class*